UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

Michael J. Lewis,

        Plaintiff,

        v.

Michael Lyon,
Michaela Merrill,
Chantel Wood,

        Defendants.

Civil Action No. 2:23–cv–138

## ORDER AND REPORT AND RECOMMENDATION
(Docs. 19, 22, 23, 24)

Plaintiff Michael Lewis, a *pro se* inmate in the custody of the Vermont Department of Corrections (DOC),[1] brings this action under 42 U.S.C. § 1983 against three employees of the Southern State Correctional Facility (SSCF) in Springfield, Vermont in their individual capacities: Michael Lyon, the Superintendent of SSCF; Michaela Merrill, then-Assistant Superintendent of SSCF and the facility's Prison Rape Elimination Act (PREA) Coordinator; and Chantel Wood, a Correctional Officer at SSCF. (Doc. 8.)[2] Lewis alleges that Wood sexually abused him repeatedly over a period of months in violation of the Eighth Amendment to the United States Constitution. (*Id.* at 23.) Further, he claims that both Lyon and Merrill "acted with deliberate indifference" by failing to protect him from a known risk of serious harm in violation of the Eighth Amendment. (*Id*. at 24–25.) Lewis also alleges that Merrill retaliated against him for engaging in protected activity—requesting an investigation into allegations of sexual abuse—in violation of the First

---

[1] Based on filings subsequent to the Complaint, it appears that Lewis is currently residing at Northern State Correctional Facility (NSCF). (*See* Doc. 24-2 at 4.)

[2] Because the pages of the Complaint are not consistently numbered, citations to the Complaint correspond to pagination generated by ECF.

Amendment.  (*Id.* at 25.)  Lewis seeks compensatory and punitive damages from all Defendants.[3]

(*Id.* at 26.)  In a separate filing, Lewis moves for a Temporary Restraining Order Issued Ex Parte

to prevent the continuing violation of his rights.  (Doc. 24.)  He has also filed a Motion to Waive

Fees Associated with Records Request (Doc. 22), and a Motion for Appointment of Counsel (Doc.

23).

Defendants Lyon, Merrill, and Wood move to dismiss the Complaint for failure to state a

claim pursuant to Federal Rule of Civil Procedure 12(b)(6).  (Doc. 19.)  Defendants argue that:

(1) Lewis failed to administratively exhaust his specific claims against all three Defendants as

required by the Prison Litigation Reform Act of 1995 (PLRA); (2) Lewis's claim for

compensatory damages should be dismissed because he fails to allege physical injury as required

by the PLRA; (3) Lewis fails to allege a violation of the Eighth Amendment by Wood; (4) Lewis

has insufficiently alleged the personal involvement of Lyon and Merrill in the alleged wrongful

conduct; (5) Lewis does not allege adverse action in his retaliation claim against Merrill; and

(6) Defendants are entitled to qualified immunity.  (*Id.*)

For the reasons set forth below, I recommend that Defendants' Motion to Dismiss (Doc.

19) be GRANTED with leave to amend the Complaint.  I further recommend that Lewis's

"Motion for a Temporary Restraining Order Issued Ex Parte" (Doc. 24) be DENIED.  As to

Lewis's requests on non-dispositive matters, the Motion to Waive Fees Associated with Records

---

[3] The Complaint also appears to request injunctive relief against Defendants.  (Doc. 8 at 1.)  However, "[c]laims for prospective relief against . . . state officer[s] may be asserted only against . . . officer[s] in [their] official capacit[ies]."  *Poe v. Massey*, 3 F. Supp. 2d 176, 176 (D. Conn. 1998) (citing *Kentucky v. Graham*, 473 U.S. 159, 167 n.14 (1985)); *Stutes v. Tipton*, 540 F. Supp. 2d 516, 519 (D. Vt. 2008) ("With respect to his requests for declaratory and injunctive relief, such relief is unavailable in suits against officials in their individual capacities."); *Taylor v. Dorantes*, Civ. No. 3:19CV01350(JCH), 2019 WL 13293562, at *4 (D. Conn. Oct. 16, 2019) ("A plaintiff may not obtain injunctive relief against a state official in her individual capacity.").  Therefore, the Court construes the Complaint as requesting only monetary damages because Plaintiff sues Defendants in their individual capacities (Doc. 8 at 2, 4).  In addition, the Complaint does not explicitly request injunctive relief in the prayer for relief.  (*Id.* at 25–26.)

Request (Doc. 22) is DENIED, and the Motion for Appointment of Counsel (Doc. 23) is DENIED without prejudice.

## Factual Background

The following facts are taken from the Complaint and are assumed true for purposes of recommending dispositions on the pending Motions. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007); *Leonard F. v. Israel Disc. Bank of New York*, 199 F.3d 99, 107 (2d Cir. 1999) ("In adjudicating a Rule 12(b)(6) motion, a district court must confine its consideration to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." (internal quotation marks omitted)).

Lewis alleges that "[o]n or about August of 2021," Wood began "grooming" him by sending him handwritten letters while he was in the custody of the Vermont DOC. (Doc. 8 at 5–6, ¶¶ 7, 8.) When Lewis "return[ed] to SSCF,"[4] Wood began "physically touching, kissing, and propositioning" him. (*Id.* at 7, ¶ 11.) He alleges that Wood sexually abused him repeatedly in the "G, H, I float's office" (*id.* at 8, ¶ 15) for her "personal gratification" (*id.* at 9, ¶ 16). Lewis claims that Wood exploited her position of power over him, causing him to fear that he would "lose all he was working so hard on maintaining and operating" in order to sexually abuse him. (*Id.*)

Lewis claims that "[o]n or about shortly after being sexually abused and exploited" by Wood, he attempted to confide in Lyon. (*Id.* at 9, ¶ 17.) Lewis asserts that Lyon told Lewis to "stop talking," advised Lewis that Lyon could not be involved in this type of incident, and

---

[4] The Complaint does not clarify where Lewis was residing prior to his "return[]" to SSCF.

threatened Lewis that such an incident will cause harm to Lewis, the coffee shop,[5] and Lyon himself. (*Id.* at 10, ¶ 17.) Lewis alleges that after this conversation with Lyon, he suffered "extreme emotional stress," contemplated suicide, and began isolating himself. (*Id.* at 10, ¶ 18.) The following day, Lewis "broke down and confessed to a fellow [inmate] who was employed as SSCF's open [e]ar[]s coach," and this inmate then made a report to SSCF Staff and Merrill. (*Id.* at 10–11, ¶ 19.) Lewis alleges that "soon after," he was treated very harshly, forced to move, never paid, lost control of the coffee shop, was "subjected to multiple acts of retaliation by [D]efendant[]s[,] and then finally shipped out of SSCF." (*Id.* at 12, ¶ 23.)

Lewis alleges that during an unspecified period of time, a PREA investigation was undertaken regarding his allegations against Wood. (*Id.* ¶ 24.) He generally asserts that Merrill did not follow proper PREA protocol during the investigation by failing to inform him of his rights and failing to have him examined by a medical or mental health professional (*Id.* at 12–13, ¶¶ 24, 25.)

Lewis also alleges that during an unspecified period of time, Merrill "ordered multiple SSCF security staff and caseworker[]s to carry out various acts that constitute retaliation." (*Id.* at 13, ¶ 26.) He claims that Merrill retaliated by ordering Lewis to be placed in a cell with an inmate known to be dangerous. (*Id.* at 14, ¶ 27.) Lewis ultimately did not share a cell with the inmate because he was permitted to choose a different cell. (*Id.* ¶ 29.) He further claims that Merrill retaliated against him by ordering a corrections officer to issue Lewis a disciplinary report for "interfering with an officer in the line of his duty." (*Id.* at 20, ¶ 44.) Lewis alleges that the disciplinary report was never adjudicated. (*Id.* ¶ 45.)

---

[5] Throughout the Complaint, Lewis references his "small business coffee shop," which he appears to have operated within SSCF. (Doc. 8 at 12, ¶ 23.) Lewis alleges that after his attempt to speak with Lyon regarding Wood's alleged sexual abuse, Lyon "convinced" Lewis to teach another inmate how to manage the coffee shop, its finances, the scheduling of employees, and the day-to-day operations. (*Id.* at 11, ¶ 22.)

## Discussion

### I.     Standard of Review

"To survive a [Rule 12(b)(6)] motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)); *see also* Fed. R. Civ. P. 8(a)(2). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. This does not require a plaintiff to provide "detailed factual allegations" to support his claims, but the "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. The plaintiff must allege sufficient facts to show "more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678. If the plaintiff "ha[s] not nudged [his] claims across the line from conceivable to plausible, [his] complaint must be dismissed." *Twombly*, 550 U.S. at 570.

In assessing the adequacy of the pleadings, a court must accept all factual assertions as true and draw all reasonable inferences in favor of the plaintiff. *See Wilson v. Merrill Lynch & Co., Inc.*, 671 F.3d 120, 128 (2d Cir. 2011); *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007). A complaint is properly dismissed, where, as a matter of law, "the allegations in [it], however true, could not raise a claim of entitlement to relief." *Twombly*, 550 U.S. at 558. Conversely, this presumption of truth "is inapplicable to legal conclusions," and therefore the court need not credit "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Iqbal*, 556 U.S. at 678; *see also Faber v. Metropolitan Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011) ("We are not . . . bound to accept conclusory allegations or legal conclusions masquerading as factual conclusions." (internal quotation marks omitted)).

As Lewis is proceeding *pro se*, the Court must read his pleadings liberally and interpret them "to raise the strongest arguments that they suggest." *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994); *McEachin v. McGuinnis*, 357 F.3d 197, 200 (2d Cir. 2004) (liberal reading of *pro se* pleadings particularly appropriate in cases alleging civil rights violations). Nevertheless, even a *pro se* plaintiff "must state a plausible claim for relief." *Hogan v. Fischer*, 738 F.3d 509, 515 (2d Cir. 2013).

In examining the facial plausibility of a claim under Rule 12(b)(6), "the Court may consider documents attached as an exhibit [to the complaint] or incorporated by reference, documents that are 'integral' to plaintiff's claims, even if not explicitly incorporated by reference, and matters of which judicial notice may be taken." *Thomas v. Westchester Cty. Health Care Corp.*, 232 F. Supp. 2d 273, 275 (S.D.N.Y. 2002) (citations omitted); *see also Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152–53 (2d Cir. 2002). "To be incorporated by reference, the Complaint must make a clear, definite and substantial reference to the documents." *Thomas*, 232 F. Supp. 2d at 275. If the court considers these additional materials, "[d]etermining whether a complaint states a plausible claim for relief [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

## II.    Threshold Issues Under the PLRA

Defendants assert that the PLRA requires dismissal of the Complaint on two grounds: (1) Lewis has not exhausted his administrative remedies prior to bringing this lawsuit; and (2) Lewis's claims for compensatory damages should be dismissed because he has not alleged physical injury as required by the PLRA. (Doc. 19 at 3–4, 4–5.) I recommend that the Court deny Defendants' Motion to Dismiss for failure to exhaust administrative remedies. I further recommend that the Court dismiss Lewis's claims seeking compensatory damages for mental or

emotional injuries resulting from Wood's alleged sexual abuse and Lyon and Merrill's alleged deliberate indifference.

### A.    Exhaustion of Administrative Remedies

"The purpose of the PLRA is to reduce the quantity and improve the quality of prisoner suits[,] and to afford corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." *Amador v. Andrews*, 655 F.3d 89, 96 (2d Cir. 2011) (alterations and internal quotations marks omitted).  To that end, the PLRA requires prisoners to exhaust available administrative remedies before filing a federal lawsuit related to prison conditions.  *See* 42 U.S.C. § 1997e(a) ("No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.").  The exhaustion requirement "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002).  "[P]risoners must complete the administrative review process in accordance with the applicable procedural rules—rules that are defined not by the PLRA, but by the prison grievance process itself." *Johnson v. Killian*, 680 F.3d 234, 238 (2d Cir. 2012) (quoting *Jones v. Bock*, 549 U.S. 199, 218 (2007)).

A court should not dismiss on exhaustion grounds unless an inmate's failure to exhaust is clear on the face of the complaint. *See Williams v. Correction Officer Priatno*, 829 F.3d 118, 122 (2d Cir. 2016) ("[A] district court . . . may dismiss a complaint for failure to exhaust administrative remedies if it is clear on the face of the complaint that the plaintiff did not satisfy the PLRA exhaustion requirement." (citing *Jones*, 549 U.S. at 215)).  Exhaustion under the PLRA, however, is "not a jurisdictional predicate." *Giano v. Goord*, 380 F.3d 670, 675 (2d Cir. 2004), *abrogated on other grounds by Ross v. Blake*, 578 U.S. 632 (2016).  Rather, "'failure to exhaust is

7

an affirmative defense,' and 'inmates are not required to specially plead or demonstrate exhaustion in their complaints.'" *Grullon v. City of New Haven*, 720 F.3d 133, 141 (2d Cir. 2013) (quoting *Jones*, 549 U.S. at 216). Because it is an affirmative defense, it is the defendant's burden "to demonstrate nonexhaustion[;]" it is "not [the] [p]laintiff's burden to plead exhaustion with particularity." *Barnes v. County of Monroe*, 85 F. Supp. 3d 696, 722 (W.D.N.Y. 2015). "Consequently, most district courts in this Circuit have concluded that the defendant bears the burden of proving the plaintiff's failure to comply with the exhaustion requirement." *Akey v. Haag*, No. 1:05–CV–331, 2006 WL 3246146, at *5 (D. Vt. Oct. 4, 2006) (collecting cases).

Accordingly, "the issue of exhaustion is generally not amenable to resolution by way of a motion to dismiss." *Lopez* v. *Cipolini*, 136 F. Supp. 3d 570, 583 (S.D.N.Y. 2015) (internal quotation marks omitted); *see also Lewis v. Havernack*, Civil Action No. 9:12–CV–0031 (GLS/DEP), 2013 WL 1294606, at *4 (N.D.N.Y. Mar. 28, 2013) ("The exhaustion defense is one that is not particularly well-suited for resolution [on] a motion to dismiss, absent the clearest indication in a plaintiff's complaint that a failure to exhaust has occurred."); *Preterotti v. Souliere*, Civil Action No. 2:16-cv-72-wks-jmc, 2016 WL 7971319, at *3–4 (D. Vt. Dec. 28, 2016) (noting that "it is generally inappropriate for a district court to grant a motion to dismiss on failure to exhaust grounds, unless nonexhaustion is evident on the face of the plaintiff's complaint"), *report and recommendation adopted sub nom. Preterotti v. Douliere*, 2017 WL 318798 (Jan. 23, 2017). "In other words, although a complaint cannot be dismissed for failing to plead that administrative remedies were exhausted, it *can* be dismissed if it pleads facts demonstrating that administrative remedies were *not* exhausted." *Gibson v. Cuomo*, 20-CV-1455-JLS-MJR, 2023 WL 3793989, at *9 (W.D.N.Y. Mar. 28, 2023). As one court has explained the distinction:

> If a prisoner chooses to plead facts regarding exhaustion, and those facts show that he failed to exhaust his available administrative remedies, then his complaint may be

dismissed for failure to state a claim. Simply stated, if a prisoner says nothing or little about exhaustion in his *pro se* civil rights complaint, he is likely protected from a [Rule] 12(b)(6) motion to dismiss premised on failure to exhaust. However, if he says too much about exhaustion in that complaint so that his non-exhaustion is readily apparent, he may "plead himself out of court," as the saying goes.

*Fox v. Lee*, No. 9:15-CV-0390 (TJM/CFH), 2018 WL 1211111, at *11 (N.D.N.Y. Feb. 5, 2018)

(quoting *Trapani v. Pullen*, No. 9:14-CV-00556 (TJM/TWD), 2016 WL 1295137, at *6 (N.D.N.Y.

Feb. 18, 2016)).

Courts in this Circuit have found non-exhaustion readily apparent on the face of the complaint where the plaintiff affirmatively states that he has not filed grievances or that he has not completed the grievance process. *See, e.g.*, *Lewis v. Hanson*, No. 9:16-CV-804 (MAD/TWD), 2017 WL 4326084, at *3 (N.D.N.Y. Sept. 28, 2017) (finding that it was clear from the face of the plaintiff's complaint that he failed to exhaust his administrative remedies where he stated that his grievances were still pending).

Lewis's lack of exhaustion is not evident on the face of his Complaint. He does not allege that he failed to file grievances, that grievances are still pending, or that he has not completed the appeals grievance process. To the contrary, he specifically alleges that he completed the grievance process:

> Plaintiff has exhausted all of his administrative remedies by completing VTDOC's grievance process starting with both informal and formal grievances, to include but not limited to, appeal[]s of steps one and two (informal & formal) to the VTDOC commissioner of corrections. Annexed to this complaint for judicial notice are copies of the grievance[]s, appeals, and plaintiff[']s hand-writ[t]en letters to the office of the VTDOC commissioner thereby having exhausted his administrative remedies pursuant to VTDOC Directive 320.01.

(Doc. 8 at 4–5, ¶ 6.) Lewis represents that he attached copies of the relevant grievance documents to the Complaint, but the documents do not appear to be filed with the Complaint. Nevertheless, Lewis alleges that he completed both formal and informal grievance procedures, including appeals, in compliance with the DOC's grievance process. Although these allegations do not

specifically detail the steps Lewis took to satisfy the grievance process requirements, the Court

cannot conclude at this stage that Lewis has failed to exhaust administrative remedies.  His

exhaustion allegations are therefore sufficient to survive a motion to dismiss, particularly given

that a plaintiff is not required to plead exhaustion under the PLRA.  *See Tobin v. Touchette*, Civil

Action No. 2:19-cv-213-cr-jmc, 2020 WL 6828013, at *3 (D. Vt. July 15, 2020) (nonexhaustion

was not clear on the face of the complaint where plaintiff alleged that he filed grievances and

broadly asserted that "[e]very attempt to resolve was exhausted"); *Allah v. Switz*, No. 14-CV-5970

(KMK), 2017 WL 519269, at *5 (S.D.N.Y. Feb. 7, 2017) (plaintiff's allegation that he "filed a

grievance and wrote other complain[t]s" was "more than sufficient" to withstand a motion to

dismiss for failure to grieve" (alteration in original) (internal quotation marks omitted)); *Fox*, 2018

WL 1211111, at *11 ("Because plaintiff has said 'little' regarding exhaustion [of] his complaints,

non-exhaustion is not 'readily apparent' from the face of his complaint.").

        In support of their argument that Lewis has failed to exhaust administrative remedies,

Defendants attach Exhibits B and C, which are two grievance forms that Lewis appears to have

filed while residing at NSCF in which he makes claims of DOC staff misconduct at SSCF.  (Doc.

19 at 4.)  Exhibit B is an "Emergency or Formal Grievance Submission Form" filed in March

2023.  Exhibit C appears to be an appeal to the DOC Commissioner filed by Lewis on March 26,

2023.  (Doc. 19-2, Doc. 19-3.)  As an initial matter, Defendants do not cite any authority that

would allow the Court to consider defense exhibits regarding exhaustion in support of a motion to

dismiss.  Under similar circumstances, courts in this Circuit have declined to consider grievance

documents attached to a motion to dismiss.  *See, e.g.*, *Preterotti*, 2016 WL 7971319, at *4

(declining to consider the exhibits attached to defendant's motion to dismiss and ultimately

concluding that failure to exhaust was not apparent on the face of the complaint); *Allah*, 2017 WL

519269, at *4–5 (on motion to dismiss declining to consider defendants' exhibits on exhaustion

because "[e]xhaustion is not integral to Plaintiff's claims—it is an affirmative defense that Defendants bear the burden of proving" (internal quotation marks omitted)); *Boomer v. Bentivenga*, 19-CV-4754 (PMH), 2021 WL 1163658, at *5 (S.D.N.Y. Mar. 26, 2021) (declining on motion to dismiss to consider defendants' exhibits on exhaustion because the exhibits "were not attached to the [c]omplaint and therefore not considered properly at this stage").

Even assuming that consideration of Defendants' exhibits is legally proper at this stage, I do not recommend dismissal of the Complaint for failure to exhaust based on Exhibits B and C. Defendants assert that "Plaintiff's two grievance documents did not provide any information about Defendant Wood, when or where anything inappropriate occurred, or even what misconduct he was complaining of." (Doc. 19 at 4.) Defendants further contend that the grievance documents did not allege any conduct whatsoever by Lyon or Merrill, nor any retaliatory conduct on the part of any Defendant. (*Id.*) Even crediting Defendants' description of these grievance documents, it is not clear that these documents represent Lewis's relevant grievance filings in their entirety. Indeed, Lewis asserts in his Opposition to Defendants' Motion to Dismiss that he filed more grievances than those attached to the Defendants' Motion. (Doc. 25 at 13.) Given the unclear state of the administrative record with respect to Lewis's grievances, it is premature under these circumstances to consider dismissal based on failure to exhaust. Lewis's purported failure to exhaust is simply not clear on the face of the Complaint.

Accordingly, I recommend that the Court deny Defendants' Motion to Dismiss based on failure to exhaust administrative remedies.

### B.    Limitation on Recovery of Compensatory Damages

Under the PLRA, "[n]o Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury or the commission of a sexual act (as defined in section

2246 of Title 18)." 42 U.S.C. § 1997e(e). "The PLRA limits the types of injuries for which a prisoner may recover in a federal civil lawsuit." *Russell v. Pallito*, Case No. 5:15–cv–126, 2017 WL 1093187, at \*4 (D. Vt. Mar. 23, 2017). The PLRA "is generally interpreted to preclude a prisoner complaining of mental and emotional injury during imprisonment, without a showing of physical injury, from receiving an award of compensatory damages." *Walker v. Schult*, 45 F.4th 598, 612 (2d Cir. 2022) (absent a showing of physical injury, a complaint seeking compensatory damages for mental or emotional injury is barred by § 1997e(e) and therefore subject to dismissal for failure to state a claim). The Second Circuit has also held that the physical injury requirement of § 1997e(e) applies to claims of constitutional violations. *Thompson v. Carter*, 284 F.3d 411, 417 (2d Cir. 2002) ("We agree with the majority of our sister circuits that Section 1997e(e) applies to claims in which a plaintiff alleges constitutional violations so that the plaintiff cannot recover damages for mental or emotional injury for a constitutional violation in the absence of a showing of actual physical injury.").

### 1.    Compensatory Damages Based on Eighth Amendment Violations

Lewis does not allege "physical injury or the commission of a sexual act" stemming from Wood's alleged sexual abuse or Lyon and Merrill's alleged failure to protect him. 42 U.S.C. § 1997e(e). As a result of Wood's alleged kissing and touching him, Lewis alleges that he experienced fear and shock, suffered "extreme emotional stress," "contemplated suicidal ideation," and "began isolating himself." (Doc. 8 at 10, ¶ 18.) He has not provided further detail regarding the scope of these injuries or otherwise indicated how he suffered any physical injury as a result of Defendants' alleged misconduct. These conclusory statements, without more, do not constitute "physical injury" under the PLRA. *See McCloud v. Tureglio*, No. 9:07-CV-0650, 2008 WL 1772305, at \*9 (N.D.N.Y. Apr. 15, 2008) ("[N]umerous courts have held . . . that physical manifestations of emotional injuries (e.g., anxiety, depression, stress, nausea, hyperventilation,

headaches, insomnia, dizziness, appetite loss, weight loss, etc.) are not 'physical injuries' for purposes of the PLRA.").  Lewis's allegations of sexual abuse also do not meet the definition of "sexual act" under the PLRA.  Lewis asserts that Wood kissed, touched, and propositioned him. (Doc. 8 at 7, ¶ 11.)  However, a "sexual act" requires genital to genital contact, oral to genital contact, or penetration.  *See* 42 U.S.C. § 1997e(e) (incorporating the definition of "sexual act" provided in 18 U.S.C. § 2246(2)).

Lewis contends that he is not required to allege physical injury to state an Eighth Amendment claim.  (Doc. 25 at 14 (citing *Crawford v. Cuomo*, 796 F.3d 252 (2d Cir. 2015)).) Lewis's reliance on *Crawford* is misplaced.  In *Crawford*, the court addressed the physical injury requirement as it related to the objective element of sexual abuse claims under the Eighth Amendment, not the physical injury requirement as it related to mental and emotional damages under the PLRA.  *Crawford*, 796 F.3d at 257 ("To show that an incident or series of incidents was serious enough to implicate the [Eighth Amendment], an inmate need not allege that there was penetration, physical injury, or direct contact with uncovered genitalia.").  Although *Crawford* recognized that sexual abuse of prisoners constitutes an Eighth Amendment violation (Doc. 25 at 14), it did not address whether certain types of sexual abuse meet the definition of "physical injury" or "sexual act" under § 1997e(e)'s limitation on compensatory damages.  Lewis is not required to allege physical injury to "state a cognizable Eighth Amendment claim" based on sexual abuse under *Crawford*, but the PLRA separately requires physical injury before an inmate may bring a claim for compensatory damages.  In other words, even if the alleged conduct amounts to an Eighth Amendment violation, the PLRA bars compensatory damages for sexual abuse that does not meet the PLRA's definition of a "sexual act."  Lewis cannot recover

compensatory damages for his emotional or mental injuries unless the alleged sexual abuse could itself be considered a physical injury.[6]

Because Lewis does not allege physical injury, and the alleged sexual abuse does not meet the definition of a "sexual act" in § 1997e(e), Lewis's claim of sexual abuse by Wood and claim that Lyon and Merrill failed to protect him should be dismissed insofar as he is seeking compensatory damages for emotional or mental injury.

### 2.    Compensatory Damages Based on First Amendment Violation

Lewis does not allege physical injury stemming from Merrill's alleged retaliation in violation of the First Amendment.  However, unlike § 1983 claims based on Eighth Amendment violations, a prisoner is not required to allege physical injury to recover compensatory damages for the loss of a constitutional liberty interest under the First Amendment.  *See Walker v. City of New York*, 367 F. Supp. 3d 39, 65 (S.D.N.Y. 2019); *Sheppard v. Roberts*, No. 3:20-cv-00875 (VAB), 2021 WL 3023090, at *3 (D. Conn. July 16, 2021); *Rodriguez v. Touchette*, Civil Action No. 5:19–cv–143-gwc-jmc, 2020 WL 2322615, at *6 (D. Vt. May 11, 2020).  *Edwards v. Touchette*, Civil Action No. 2:19–cv–151-cr-jmc, 2020 WL 6828010, at *5 (D. Vt. Aug. 4, 2020) (PLRA's bar on compensatory damages does not apply to First Amendment claims because "a prisoner-plaintiff may still recover compensatory damages for the loss of a 'constitutional liberty interest'"), *report and recommendation adopted sub nom. Edwards v. Vermont*, 2020 WL 5627144 (Sept. 21, 2020).  "[T]he denial of a specific opportunity to exercise one's First

---

[6] A 2013 amendment to § 1997e(e) expanded the definition of physical injury to include "sexual act[s]."  *See* Violence Against Women Reauthorization Act of 2013, Pub. L. 113-4, § 1101, 127 Stat 54 (2013) (codified as amended at 42 U.S.C. § 1997e(e)).  Prior to the amendment, the Second Circuit interpreted the term "physical injury" to include sexual abuse.  *See Liner v. Goord*, 196 F.3d 132, 135 (2d Cir. 1999) (reasoning that the alleged sexual abuse—"intrusive body searches"—"qualify as physical injuries as a matter of common sense").  It is not clear whether that interpretation survives the 2013 amendment.

Amendment rights can itself be a compensable injury" under § 1997e(e). *Russell*, 2017 WL 1093187, at *6 (citing *Irish Lesbian & Gay Org. v. Giuliani*, 143 F.3d 638, 649 (2d Cir. 1998).

As Lewis has not described how Merrill's alleged retaliation caused any actual or compensable injury based on the loss of his constitutional liberty interests, the First Amendment retaliation claim for compensatory damages should be dismissed.[7]

## III.    Claims Under 42 U.S.C. § 1983

Under 42 U.S.C. § 1983, a plaintiff may assert a civil claim "against '[e]very person who, under color of any statute . . . of any State . . . subjects, or causes to be subjected, any citizen . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws . . . .'" *Wyatt v. Cole*, 504 U.S. 158, 161 (1992) (alterations in original) (quoting 42 U.S.C. § 1983). "Section 1983 is not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred." *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (internal quotation marks omitted). "The purpose of § 1983 is to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights and to provide relief to victims if such deterrence fails." *Wyatt*, 504 U.S. at 161.

To state a claim under § 1983, a plaintiff must plausibly plead "(1) 'that some person has deprived him of a federal right,' and (2) 'that the person who has deprived [the plaintiff] of that right acted under color of state . . . law.'" *Velez v. Levy*, 401 F.3d 75, 84 (2d Cir. 2005) (omission in original) (quoting *Gomez v. Toledo*, 446 U.S. 635, 640 (1980)). The complaint "must contain specific allegations of fact which indicate a deprivation of constitutional rights; allegations which

---

[7]  As explained in Part III below, I also recommend dismissal of the First Amendment retaliation claim because Lewis's allegations are insufficient to state a claim.

Lewis also seeks punitive damages "against each defendant jointly and severally." (Doc. 8 at 26.) However, given the recommendation that the Complaint be dismissed, this Report and Recommendation does not address punitive damages.

are nothing more than broad, simple, and conclusory statements are insufficient to state a claim under § 1983." *Alfaro Motors, Inc. v. Ward*, 814 F.2d 883, 887 (2d Cir. 1987).

Lewis seeks redress for the alleged deprivation of his rights under the First and Eighth Amendments of the United States Constitution.[8] (Doc. 8 at 23–25.) He alleges that Wood sexually abused him in violation of his Eighth Amendment right against cruel and unusual punishment. (*Id.* at 23, ¶ 47.) He also appears to allege that Lyon and Merrill violated his Eighth Amendment rights by their deliberate indifference to a serious risk of harm to him due to Wood's alleged sexual abuse. (*Id.* at 24–25, ¶¶ 48, 49.) Finally, Lewis appears to assert a First Amendment claim arising out of Merrill's allegedly retaliatory actions in response to Lewis's reports of sexual abuse.[9] (*Id.* at 25, ¶ 49.)

## A.    Eighth Amendment Sexual Abuse Claim Against Wood

Defendants argue that Lewis's Eighth Amendment claim against Wood should be dismissed because "[e]ven taking Plaintiff's allegations as true, his allegations of sexual misconduct . . . do not rise to the level of objective seriousness to constitute an Eighth Amendment violation." (Doc. 19 at 5.)

"To state an Eighth Amendment claim, a prisoner must allege two elements, one subjective and one objective." *Crawford*, 796 F.3d at 256. First, "the prisoner must allege that the defendant acted with a subjectively sufficiently culpable state of mind." *Id.* (internal quotation marks

---

[8] Lewis articulates his claims as arising under the Eighth Amendment to the Vermont Constitution. (Doc. 8 at 2, 23, 24, 25.) As § 1983 is a vehicle to remedy the deprivation of federal rights, the Court construes his claims under the First and Eighth Amendments to the United States Constitution. *See Albright v. Oliver*, 510 U.S. 266, 271 (1994) (explaining that § 1983 vindicates federal rights).

[9] Lewis appears to assert various claims directly under PREA. (Doc. 8 at 6, 12, 13, 21.) However, any such claims should be dismissed because PREA does not confer a private right of action. *See Breer v. Medor*, No. 2:12-CV-53, 2013 WL 4456896, at *6 (D. Vt. Aug. 16, 2013) ("[T]he PREA 'confers no private right of action.' . . . 'The PREA is intended to address the problem of rape in prison, authorizes grant money, and creates a commission to study the issue. The statute does not grant prisoners any specific rights.'" (quoting *Chinnici v. Edwards*, No. 1:07–CV–229, 2008 WL 3851294, at *3 (D. Vt. Aug. 12, 2008))).

omitted).  Second, he must "allege that the conduct was objectively harmful enough or sufficiently serious to reach constitutional dimensions."  *Id.* (internal quotation marks omitted).

"A corrections officer's intentional contact with an inmate's genitalia or other intimate area, which serves no penological purpose and is undertaken with the intent to gratify the officer's sexual desire or humiliate the inmate, violates the Eighth Amendment."  *Id.* at 257 (explaining that an inmate does not need to allege penetration, physical injury, or direct contact with uncovered genitalia to show that the conduct is serious enough to implicate the Constitution).  Further, "[i]n determining whether an Eighth Amendment violation has occurred, the principal inquiry is whether the contact is incidental to legitimate official duties, such as a justifiable pat frisk or strip search, or by contrast whether it is undertaken to arouse or gratify the officer or humiliate the inmate."  *Id.* at 257–58.  To determine the purpose of a jail official's conduct, courts have considered the timing of the official's actions and anything said by the jail official during and after an incident.  *See Shepherd v. Fisher*, No. 08-CV-9297 (RA), 2017 WL 666213, at *18 (S.D.N.Y. Feb. 16, 2017).

Lewis asserts that when he "return[ed]" to SSCF, Wood "immediately began physically touching, kissing, and propositioning" him with no penological purpose.  (Doc. 8 at 7, ¶ 11.)  The kissing of an inmate is not incidental to a correctional officer's legitimate official duties.  *See Boddie v. Schnieder*, 105 F.3d 857, 861 (2d Cir. 1997) ("Where no legitimate law enforcement or penological purpose can be inferred from the defendant's alleged conduct, the abuse itself may, in some circumstances, be sufficient evidence of a culpable state of mind.").  But even assuming that Lewis's allegation satisfies the subjective element of an Eighth Amendment claim, he has not alleged sufficient facts to meet the objective element of the claim.

The allegations regarding Wood's alleged sexual abuse are general and conclusory.  (Doc. 19 at 6.)  Lewis alleges that Wood sexually abused him on multiple occasions.  (Doc. 8 at 8, ¶ 15.)

Although he generally states that Wood touched, kissed, and propositioned him, he does not allege any specific facts regarding the allegedly abusive conduct.  For example, Lewis maintains that the sexual abuse took place in the "G, H, I float's office," but he does not provide details regarding when or how the alleged sexual abuse occurred.  (*Id*.)  Although Lewis alleges that Wood "instill[ed] fear in [him]" that he would "lose all he was working so hard on maintaining and operating," he does not describe what exactly Wood did, how often this conduct occurred, or what Wood allegedly said to instill such fear.  (*Id.* at 9, ¶ 16.)  Such details are necessary to determine whether Wood's alleged conduct "rise[s] to the severity of an Eighth Amendment violation." *Crawford*, 796 F.3d at 260; *cf. Breer v. Medor*, No. 2:12-CV-53, 2013 WL 4456896, at *7 (D. Vt. Aug. 16, 2013) (denying motion to dismiss Eighth Amendment sexual abuse claim where "[t]he facts are alleged within a specific time frame, contain specific detail regarding [defendant]'s behavior, and go well beyond a 'small number of incidents.'" (quoting *Boddie*, 105 F.3d at 861)); *Goins v. Wosneack*, 6:15-cv-6234 EAW, 2016 WL 1271701, *5 (W.D.N.Y. Mar. 30, 2016) (reasoning that "[u]nder the standard set forth in *Crawford*, [p]laintiff has plausibly stated a claim for a violation of her Eighth Amendment rights" where plaintiff alleged that defendant "intentionally touched her in an intimate area (i.e. by rubbing his penis against her buttocks) with the intent to gratify his own sexual desire and for no legitimate penological purpose"); *Smith v. Roberson*, 9:15-CV-0930 (DNH/TWD), 2016 WL 1056588, at *3 (N.D.N.Y. Mar. 16, 2016) (plaintiff's allegations that defendant "chased her, exposed his genitalia to her and threatened her with sexual assault" sufficient to state a claim where plaintiff alleged that the "conduct did not serve a legitimate penological purpose"); *Jumpp v. Terranova*, CASE NO. 3:16-cv-683 (SRU), 2016 WL 2858775, at *1 (D. Conn. May 16, 2016) (denying motion to dismiss where plaintiff alleged that defendant on one occasion "slapp[ed] his buttocks and grabb[ed] his penis" without any penological purpose).

Therefore, as Lewis has not alleged sufficient facts to show "more than a sheer possibility that a defendant has acted unlawfully," *Iqbal*, 556 U.S. at 678,[10] I recommend that the Eighth Amendment claim against Wood be dismissed.

### B.     Eighth Amendment Claims Against Lyon and Merrill

Lewis appears to allege Eighth Amendment claims against Merrill and Lyon (1) arising from Wood's alleged sexual abuse and (2) due to their alleged failure to protect him from an allegedly violent inmate.  (Doc. 8 at 24–25.)  For the reasons explained below, I recommend dismissal of these claims because Lewis does not adequately allege Lyon or Merrill's personal involvement in Wood's alleged sexual abuse.  Lewis also does not adequately state failure to protect claims against Lyon and Merrill based on their alleged deliberate indifference to a substantial risk that Lewis would be harmed.

### 1.     Personal Involvement in Wood's Alleged Sexual Abuse

"It is well settled in this Circuit that personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983."  *Spavone v. N.Y. State Dep't of Corr. Servs.*, 719 F.3d 127, 135 (2d Cir. 2013) (quoting *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995)).  A defendant may therefore only be held accountable for his own actions under § 1983, *see Iqbal*, 556 U.S. at 683, and the plaintiff must show some "tangible connection" between the constitutional violation alleged and the defendant.  *Bass v. Jackson*, 790 F.2d 260, 263 (2d Cir. 1986).

---

[10] Lewis provides significantly more factual detail in his Affidavit attached to the Opposition to Defendants' Motion to Dismiss.  (*See generally* Doc. 25-1.)  However, this Report and Recommendation does not consider new facts raised for the first time in an opposition brief and not pleaded in the Complaint.  *See Neisner v. Town of Killington*, No. 1:16-cv-4-jgm, 2016 WL 7441637, at *2 (D. Vt. Dec. 27, 2016) ("'Plaintiffs cannot amend their complaint by asserting new facts or theories for the first time in opposition to Defendants' motion to dismiss.'") (quoting *K.D. ex rel. Duncan v. White Plains Sch. Dist.*, 921 F. Supp. 2d 197, 209 n.8 (S.D.N.Y. 2013)).

Lewis does not allege that Lyon and Merrill were personally or directly involved in Wood's alleged sexual abuse. Rather, he asserts that Lyon and Merrill "acted with deliberate indifference" by failing to protect him from Wood's alleged sexual abuse. (Doc. 8 at 24–25, ¶¶ 48, 49.) To the extent that Lewis alleges Lyon and Merrill are liable to him under a theory of supervisory liability, i.e., pursuant to their roles as Superintendent and Assistant Superintendent, the allegations against these Defendants must show some level of personal involvement given that supervisory liability in a § 1983 action cannot rest merely on a theory of respondeat superior. *Hernandez v. Keane*, 341 F.3d 137, 144 (2d Cir. 2003); *see Tangreti v. Bachmann*, 983 F.3d 609, 617 (2d Cir. 2020) ("[A] conception of supervisory liability—according to which a supervisor may be held liable based on a lesser showing of culpability than the constitutional violation requires—is inconsistent with the principle that officials may not be held accountable for the misdeeds of their agents." (internal quotation marks omitted)).

Mere "linkage in the prison chain of command" is insufficient to implicate a supervisory official in a § 1983 claim. *Ayers v. Coughlin*, 780 F.2d 205, 210 (2d Cir. 1985); *see Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (noting that a defendant in a § 1983 action may not be held liable for constitutional violations merely because he held a high position of authority). Prior to *Iqbal*, the Second Circuit identified "five categories of evidence that [could] establish the liability of a supervisory official for a subordinate's conduct" under § 1983. *Tangreti*, 983 F.3d at 616.[11] The Second Circuit has since clarified the standard that applies to supervisory liability claims in light of *Iqbal*:

---

[11] These categories consisted of: (1) direct participation in the constitutional violation; (2) failure to remedy the violation after learning of it through a report or appeal; (3) creating or allowing to continue a policy or custom amounting to a constitutional violation; (4) being grossly negligent in supervising subordinates who committed a constitutional violation; or (5) exhibiting deliberate indifference to the plaintiffs' rights by failing to act on information indicating that unconstitutional acts were occurring. *Tangreti*, 983 F.3d at 616.

> [A]fter *Iqbal*, there is no special rule for supervisory liability. Instead, a plaintiff must plead and prove that each Government-official defendant, through the official's own individual actions, has violated the Constitution. The factors necessary to establish a [§ 1983] violation will vary with the constitutional provision at issue because the elements of different constitutional violations vary. The violation must be established against the supervisory official directly.

*Id.* at 618 (second alteration in original) (citations and internal quotation marks omitted); *see Iqbal*, 556 U.S. at 676 ("Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."). As noted above, Lewis has not stated a claim of sexual abuse against Wood. Therefore, his claim against Lyon and Merrill premised on Wood's conduct necessarily fails. Even if he had stated a claim against Wood, Lewis has not alleged that either Lyon or Merrill personally participated in Wood's alleged sexual abuse. Absent personal participation in the alleged conduct, supervisory status alone is inadequate to state a claim against them for the allegedly actionable conduct of Wood.

Therefore, he has not stated a claim against Lyon and Merrill based on Wood's alleged sexual abuse.

## 2.    Failure to Protect

Construing the Complaint liberally, Lewis appears to allege that, by their deliberate indifference, Lyon and Merrill failed to protect him from substantial risk of harm. (Doc. 8 at 24–25.) Specifically, Lewis alleges that Lyon and Merrill failed to protect him from the following two incidents: (1) the alleged sexual abuse by Wood; (2) Merrill's alleged order that Lewis be placed in a cell with a violent inmate.

To state a claim "based on a failure to prevent harm, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). An inmate adequately states a failure to protect claim when correction

officials exhibit "deliberate indifference to a substantial risk of serious harm" to the prisoner. *Id.* at 828 (internal quotation marks omitted); *Morales v. New York State Dep't of Corr.*, 842 F.2d 27, 30 (2d Cir. 1988). "To succeed on such a claim, the prisoner must establish both that a substantial risk to his safety actually existed and that the offending prison officials knew of and consciously disregarded that risk." *Baines v. City of New York*, No. 01 Civ.2645 PKC GWG, 2004 WL 213792, at *6 (S.D.N.Y. Feb. 5, 2004) (citing *Farmer*, 511 U.S. at 834, 837–39); *see also Bridgewater v. Taylor*, 698 F. Supp. 2d 351, 357 (S.D.N.Y. 2010) (explaining that defendants must be aware of facts supporting an inference that harm would occur and must actually draw that inference).

### a.   Lyon and Merrill's Failure to Protect Lewis from Alleged Sexual Abuse by Wood

To the extent Lewis claims that Lyon and Merrill failed to protect him from Wood's alleged sexual abuse, he has not plausibly alleged that Lyon and Merrill knew of and consciously disregarded a substantial risk of sexual abuse. Lewis only alleges that Wood, not Lyon or Merrill, knew Lewis was going through a stressful and difficult divorce, which apparently in Lewis's view rendered him vulnerable to sexual abuse. (Doc. 8 at 6.) This allegation is insufficient to establish that Lyon or Merrill knew of a substantial risk and disregarded it. Further, while Lewis expresses discontent with Lyon's reaction to his attempted disclosure of the alleged sexual abuse, he does not allege that Lyon failed to protect him from sexual abuse after he was made aware of the risk. (*Id.* at 9.) Likewise, Lewis makes no allegations regarding Merrill's knowledge or disregard of the risk of sexual abuse. Lewis claims that he "confessed" to the facility's "open ears coach," who then made a report to Merrill (*id.* at 10–11, ¶ 19), but he does not describe what he said to the

"open ears coach" or what the "open ears coach" ultimately reported to Merrill.[12]  Therefore, Lewis's allegations are insufficient to infer that Merrill and Lyon acquired sufficient knowledge regarding the risk of sexual abuse to satisfy the subjective element for a failure to protect claim.[13] Even if Lewis had alleged Merrill and Lyon's knowledge, he has not alleged that either individual failed to take action upon learning of the alleged sexual abuse, or that the alleged failure to act resulted in harm to Lewis.  Specifically, Lewis does not allege that Lyon and Merrill failed to protect him from sexual abuse by Wood *after* allegedly learning of the abuse.  In fact, Lewis does not allege that any sexual abuse took place after he attempted to report it to Lyon and confessed it to the "open ears coach."

Therefore, I recommend that the failure to protect claims against Merrill and Lyon based on Wood's alleged sexual abuse be dismissed.

### b.    Merrill's Failure to Protect Lewis from Allegedly Violent Inmate

Lewis also appears to claim that Merrill knew of and consciously disregarded the risk that he would be assaulted by another prisoner.  He alleges that "Merrill ordered CSS Gavin to move [Lewis] into a segregation cell with a specific [inmate] known to have repeatedly assaulted multiple past cellmates of his, including but not limited to[] beating and raping his cellmates." (Doc. 8 at 14, ¶ 27.)  This claim is inadequate because Lewis does not allege, other than in a conclusory manner, that Merrill had knowledge of the inmate's allegedly violent propensity.

---

[12]  The Complaint does not explain what an "open ears coach" is or otherwise describe the role of an "open ears coach" in the context of reporting sexual abuse.

[13]  Lewis also alleges that Merrill "wholly and deliberately failed to read [him] any of the PREA policies" and "deliberately failed to have [him] examined by or screened by a single medical or mental health professional." (Doc. 8 at 12–13, ¶¶ 24–25.)  Even taking these allegations as true, they do not demonstrate that Merrill failed to protect Lewis from the alleged sexual abuse.  Rather, they merely allege Merrill's failure to follow prison PREA protocol.  As stated, PREA does not provide a basis for a claim under § 1983, *Breer*, 2013 WL 4456896, at *6, and Lewis has not alleged facts showing that Merrill's conduct regarding PREA policy rises to the level of a separate constitutional violation.

*See Anderson v. Quiros*, CASE NO. 3:18-cv-1107 (MPS), 2018 WL 3448183, at *3 (D. Conn. July 17, 2018) (dismissing failure to protect claim where plaintiff did not allege facts showing defendant knew plaintiff faced a substantial risk of harm from an allegedly violent inmate). Lewis asserts that Correctional Officer Gavin "notified [Lewis] of [the inmate's] propensity to be violent and warned [him] the cell assignment was a really bad idea." (Doc. 8 at 14, ¶ 28.) Lewis also alleges that Correctional Officers Seavy and Merrick heard the allegedly violent inmate tell Lewis that the inmate would stab Lewis if he was placed in the inmate's cell. (*Id.* at 15, ¶ 30.) These assertions, however, do not demonstrate that Merrill possessed knowledge of the inmate's violent propensity and consciously disregarded it by ordering that Lewis be placed in the inmate's cell.

Lewis's claim against Merrill also fails because he has not adequately alleged a substantial risk to his safety. In determining whether there was a "substantial risk of serious harm," courts consider the "seriousness of the injury" sustained. *Snyder v. McGinnis*, No. 03-CV-902F, 2007 WL 3274691, at *5 (W.D.N.Y. Nov. 2, 2007) (quoting *Farmer*, 511 U.S. at 834, and *Branham v. Meachum*, 77 F.3d 626, 630 (2d Cir. 1996)). According to the Complaint, Lewis was ultimately *not* placed in the same cell as the allegedly dangerous inmate, and he does not allege that this inmate assaulted him or otherwise injured him. "The majority of decisions in this Circuit have established that a plaintiff in an Eighth Amendment failure to prevent harm claim must show some form of actual injury in order [to] satisfy the objective element of the deliberate indifference standard." *Davis v. Chapdelaine*, PRISONER CASE NO. 3:16-cv-268 (VLB), 2017 WL 3222531, at *4 (D. Conn. July 28, 2017) (citing *Encarnacion v. Dann*, 80 F.App'x 140, 141 (2d Cir. 2003) (affirming district court's grant of summary judgment because plaintiff suffered no actual injury from defendants' failure to protect him from other inmate)).

Therefore, I recommend that the Court dismiss Lewis's Eighth Amendment claims against Lyon and Merrill for failure to protect him from a substantial risk of serious harm.

### C.    First Amendment Retaliation Claim Against Merrill

Lewis appears to allege a First Amendment retaliation claim against Merrill.[14]

Specifically, Lewis claims that after he reported Wood's alleged sexual abuse to an "open ears

coach," Merrill retaliated against him by ordering that he be placed in a cell with an allegedly

violent inmate and ordering that he be issued a disciplinary report.  (Doc. 8 at 14, 20.)  Defendants

argue that Lewis's claim fails because he has not alleged the required "adverse action" to state a

First Amendment retaliation claim.  (Doc. 19 at 9.)

To adequately plead a First Amendment retaliation claim, a plaintiff must plausibly allege

(i) he engaged in constitutionally protected speech or conduct, (ii) a defendant took adverse action

against him, and (iii) the protected speech and adverse action are causally connected.  *Dolan v.*

*Connolly*, 794 F.3d 290, 294 (2d Cir. 2015).  Courts examine prisoner retaliation claims with

"skepticism and particular care."  *Colon*, 58 F.3d at 872.  "[B]ecause prisoner retaliation claims

are easily fabricated, and accordingly pose a substantial risk of unwarranted judicial intrusion into

matters of general prison administration, [courts] are careful to require non-conclusory

allegations."  *Bennett v. Goord*, 343 F.3d 133, 137 (2d Cir. 2003) (internal quotation marks

omitted).  A retaliation claim that is "wholly conclusory" may be dismissed.  *Graham v.*

*Henderson*, 89 F.3d 75, 79 (2d Cir. 1996) (internal quotation marks omitted).

### 1.    Constitutionally Protected Activity

Lewis alleges that he used the established process under PREA to report Wood's sexual

abuse.  (Doc. 8 at 12–14, 24–25.)  The filing of grievances and complaints are constitutionally

protected activities.  *See Coleman v. Cuomo*, No. 9:18-CV-0390 (MAD/CFH), 2019 WL 6829613,

---

[14]    The Court construes the Complaint as alleging retaliation claims only against Merrill based upon
(1) Merrill's attempt to place Lewis in a cell with an allegedly violent inmate, and (2) causing a disciplinary report to
be filed.  The Court does not address Lewis's claims that he was "forced to move [and was] never paid," and that he
"lost any and all control of his business," because he has not attributed this alleged conduct to a specific Defendant.
(Doc. 8 at 12.)

at *10 (N.D.N.Y. Dec. 13, 2019); *Perkins v. Perez*, No. 17-CV-1341(KMK), 2019 WL 1244495, at *14 (S.D.N.Y. Mar. 18, 2019).  An inmate engages in protected activity when he files a PREA complaint.  *See Ramirez v. Allen*, CASE NO. 3:17-cv-1335 (MPS), 2017 WL 4765645, at *7 (D. Conn. Oct. 20, 2017) (finding that plaintiff's statement of intent to file a PREA complaint constitutes protected activity).  Lewis does not claim to have filed a PREA complaint.  He instead asserts that he "confessed" to the facility's "open ears coach," who then made a report to Merrill. (Doc. 8 at 10–11, ¶ 19.)  Lewis claims that a PREA investigation took place at SSCF regarding the alleged sexual abuse and that Merrill was involved by virtue of her role as the PREA Coordinator. (*Id.* at 12–13, ¶ 24.)  Even assuming Lewis's confession to the "open ears coach" was protected activity, however, he has not alleged sufficient facts that this protected activity resulted in an "adverse action" under the law.

### 2.    Adverse Action

Lewis alleges that Merrill "personally ordered multiple SSCF security staff and caseworkers to carry out various acts that constitute retaliation."  (Doc. 8 at 13, ¶ 26.)  He asserts that Merrill retaliated against him by attempting to assign him to a cell with an allegedly dangerous inmate and ordering SSCF Officer Heath to issue him a disciplinary report.  (*Id.* at 13–14, 20.)  As explained below, however, the incidents Lewis describes do not constitute adverse actions.  *See, e.g.*, *Davis v. Goord*, 320 F.3d 346, 353 (2d Cir. 2003) (holding that retaliation claims must be more than *de minimis*).

With respect to the claim that Merrill attempted to assign Lewis to a cell with a dangerous inmate, Lewis alleges that he was ultimately not placed in the cell with that inmate.  (Doc. 8 at 20.)  Taken in the light most favorable to Lewis, Merrill allegedly threatened to place Lewis in a cell with a dangerous inmate.  A defendant's threats, "without any allegation that the [defendant] carried through on those threats, [do] not constitute adverse action."  *Hill v. Chalanor*, 128 F.

App'x 187, 189 (2d. Cir. 2015); *see also Bumpus v. Canfield*, 495 F. Supp. 2d 316, 326 (W.D.N.Y. 2007) ("[V]ague intimations of some unspecified harm generally will not rise to the level of adverse action for the purpose of a First Amendment retaliation claim."). An allegation of actual placement in a cell with another inmate known for violent behavior may satisfy the "adverse action" requirement. *See Irving v. Furtik*, Civil Action No. 3:20-CV-1110 (CSH), 2022 WL 3027862, at *8 (D. Conn. Aug. 1, 2022) ("[W]ith regard to placement in a cell with an inmate with a known propensity toward violence, such a transfer may be viewed as an adverse action." (internal quotation marks omitted)). Lewis has not adequately alleged adverse action based on the attempted placement with a dangerous inmate.

Merrill's alleged order that Lewis be issued a disciplinary report also does not constitute an adverse action. Lewis states that the disciplinary report issued by Officer Heath was "not adjudicated." (Doc. 8 at 20, ¶ 45.) "[N]o cases in this Circuit hold that the filing of a misbehavior report is, without additional punishment, sufficient to find an adverse action." *Vidal v. Valentin*, No. 16-CV-5745 (CS), 2019 WL 3219442, at *8 (S.D.N.Y. July 17, 2019). "Typically, courts require a showing of additional punishment above the filing of a misbehavior report to find an adverse action." *Id.*; *see also, e.g.*, *Gill v. Pidlypchak*, 389 F.3d 379, 384 (2d Cir. 2004) (finding adverse action where false misbehavior reports were filed in conjunction with a sentence of three weeks in keeplock); *Adams v. O'Hara*, No. 9:16-CV-0527 (GTS/ATB), 2018 WL 4590015, at *3 (N.D.N.Y. Sept. 25, 2018) (adopting magistrate judge's finding of retaliation with "evidence of adverse action in the form of a false misbehavior report and disciplinary punishment"); *Flynn v. Ward*, No. 15-CV-1028 (TJM/CFH), 2018 WL 3195095, at *10 (N.D.N.Y. June 7, 2018) (holding defendant's retaliatory filing of a falsified misbehavior report must result in punishment to constitute adverse action), *report and recommendation adopted*, 2018 WL 3193201 (June 28,

2018).  Lewis has not adequately alleged an adverse action because he does not allege that he suffered punishment in addition to the filing of the disciplinary report.

### 3.    Causal Connection

Lewis also has not adequately alleged a causal connection "sufficient to support the inference that the [protected] speech played a substantial part" in the adverse action.  *Diesel v. Town of Lewisboro*, 232 F.3d 92, 107 (2d Cir. 2000) (internal quotation marks omitted).  To satisfy the causation requirement, a plaintiff must present evidence from which a jury could conclude that the protected First Amendment activity was "a substantial or motivating factor" in the prison official's adverse action against him or her.  *Graham*, 89 F.3d at 79.  In considering whether the protected First Amendment activity was a substantial or motivating factor in the adverse action, courts consider, among other factors, the temporal proximity of the alleged retaliation to the protected activity.  *See Gayle v. Gonyea*, 313 F.3d 677, 683 (2d Cir. 2002) ("We have held that the temporal proximity of an allegedly retaliatory misbehavior report to a grievance may serve as circumstantial evidence of retaliation."); *see also Barclay v. New York*, 477 F. Supp. 2d 546, 558 (N.D.N.Y. 2007) ("Types of circumstantial evidence that can show a causal connection between the protected conduct and the alleged retaliation include temporal proximity, prior good discipline, finding of not guilty at the disciplinary hearing, and statements by defendants as to their motives.").

Lewis has not plead sufficient facts to permit the Court to infer a causal connection between his constitutionally protected activity and Merrill's allegedly retaliatory conduct.  He only alleges that the purported adverse actions took place "soon after" he "confessed" to the facility's "open ears coach" and a PREA investigation ensued.  (Doc. 8 at 10, 12.)  He does not allege when the confession, the PREA investigation, or the alleged retaliatory acts occurred.  Because Lewis has not explained the temporal relationship between his "confession" to the "open ears coach" and

28

Merrill's allegedly retaliatory conduct, the Court is unable to infer a causal relationship based on temporal proximity. *Cf. Espinal v. Goord*, 558 F.3d 119, 129 (2d Cir. 2009) (temporal proximity established despite six months having elapsed where other evidence made it "plausible that the officers waited to exact their retaliation at an opportune time"); *Hollander v. Am. Cyanamid Co.*, 895 F.2d 80, 85–86 (2d Cir. 1990) (passage of three months weighed against finding a causal connection).

Further, Lewis's general allegation that Merrill was motivated by "pure hate" (Doc. 8 at 12, ¶ 24) is conclusory and does not provide a basis for the Court to infer a causal connection between the protected activity and the alleged adverse action. *See Graham*, 89 F.3d at 79 (stating that wholly conclusory claims of retaliation "can be dismissed on the pleadings alone").

For these reasons, I recommend that the Court dismiss Lewis's First Amendment retaliation claim against Merrill.

## IV.    Qualified Immunity

Defendants argue that they are entitled to qualified immunity from Plaintiff's claims because "Plaintiff fails to allege facts sufficient to support any claim under 42 U.S.C. § 1983." (Doc. 19 at 11.)

Qualified immunity is an affirmative defense that shields public officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Salahuddin v. Goord*, 467 F.3d 263, 273 (2d Cir. 2006) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). The qualified immunity analysis consists of two inquiries. First, the plaintiff must plausibly allege that the public official's conduct violated a constitutional right. *Salahuddin*, 467 F.3d at 273. Second, the court must ascertain whether the right was clearly established and, if so, whether the defendant's actions were objectively unreasonable in light of this clearly established precedent.

*Id.*; *see also In re State Police Litig.*, 88 F.3d 111, 123 (2d Cir. 1996) ("A right whose existence is indicated by prior case law with reasonable specificity is clearly defined within the meaning of this doctrine." (internal quotation marks omitted)).

The inquiry "is often fact-intensive, and if facts are in dispute, a court may need to have a jury resolve them before it can decide whether qualified immunity bars a plaintiff's claim or, at least, it may require a full record on a motion for summary judgment to determine if there is a factual issue." *Birch v. City of New York*, 184 F. Supp. 3d 21, 28 (E.D.N.Y. 2016) (citation omitted); *see also Armstrong v. State of Conn. Dep't of Children & Families Juvenile Training School*, No. 3:04CV360(WWE), 2004 WL 1151592, at *2 (D. Conn. May 12, 2004) (qualified immunity more appropriately raised at summary judgment). "Not only must the facts supporting the defense appear on the face of the complaint, but, as with all Rule 12(b)(6) motions, the motion may be granted only where 'it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief.'" *McKenna v. Wright*, 386 F.3d 432, 436 (2d Cir. 2004) (citation omitted) (quoting *Citibank, N.A. v. K-H Corp.*, 968 F.2d 1489, 1494 (2d Cir. 1992)).

As this Report and Recommendation recommends dismissal of the Complaint with leave to amend, I do not address qualified immunity. *See, e.g.*, *Gunn v. Malani*, No. 20-CV-2681 (KMK), 2021 WL 5507057, at *8 (S.D.N.Y. Nov. 23, 2021) (granting motion to dismiss with leave to amend and holding that "it is inappropriate [to] rule on the issue of qualified immunity" until the court was presented with a more developed factual record); *Guinn v. Kaplan*, 16.CV-03185 (NSR), 2018 WL 4333991, at *6 (S.D.N.Y. Sept. 10, 2018) (granting motion to dismiss with leave to amend, and finding it "unnecessary to address Defendants' claim of qualified immunity since the complaint fails to assert a plausible claim").

## V.    Lewis's Motion for a Temporary Restraining Order

After the filing of the Complaint, Lewis filed a "Motion for Temporary Restraining Order Issued Ex Parte" for the purpose of restraining Defendant Merrill and two non-parties, Monique Sullivan and Amy Jacobs.[15]  (Doc. 24 at 1.)  Lewis requests that the restraining order be "binding upon the Vermont Department of Corrections ("VDOC")[,] their officer[]s, agents, servants, employee[s], and attorney[]s, and upon those persons in active concert or participation with them." (*Id.* at 1–2.)  He seeks to enjoin these individuals from: (1) retaliating against him for reporting sexual abuse by a staff member; (2) retaliating against him for exercising his First Amendment right to "enjoy written, phone, or email communication" with certain individuals unless he has been notified that such communication is prohibited in writing; and (3) retaliating against him by "placing him in segregation without due process."  (*Id.* at 2–3.)

To obtain a temporary restraining order (TRO), the movant must show: (1) specific facts in an affidavit or a verified complaint clearly showing that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; and (2) certification in writing by the movant's attorney regarding any efforts made to give notice and the reasons why it should not be required.  Fed. R. Civ. P. 65(b); *see also Chapman v. Merch. Mart Properties*, No. 2:07–CV–61, 2007 WL 922258, at *3 (D. Vt. Mar. 23, 2007).  To satisfy the first element, an immediate and irreparable injury cannot be "remote or speculative but [must be] actual and imminent." *Harris v. Wu*, Case No. 3:17–cv–440(VAB), 2017 WL 2513880, at *3 (D. Conn. June 9, 2017) (internal quotation marks omitted).

---

[15]  Lewis also seeks to seek to restrain Lyon, Merrill, and Wood from "initiating any disciplinary punishment" against him and communicating with him, "as Plaintiff is no longer in [SSCF]'s custody or care."  (Doc. 24 at 3; *see also* Doc. 24-2 at 2.)

As a result, in addition to "irreparable harm," one of two related standards must be met: "either (a) a likelihood of success on the merits, or (b) sufficiently serious questions going to the merits of [the] claims to make them fair ground for litigation, plus a balance of the hardships tipping decidedly in favor of the moving party." *Stagliano v. Herkimer Cent. Sch. Dist.*, 151 F. Supp. 3d 264, 272 (N.D.N.Y. 2015) (internal quotation marks omitted); *see also Chapman*, 2007 WL 922258, at *4. "When the movant seeks a mandatory injunction—that is, as in this case, an injunction that will alter rather than maintain the status quo—[]he must meet the more rigorous standard of demonstrating a clear or substantial likelihood of success on the merits." *Doninger v. Niehoff*, 527 F.3d 41, 47 (2d Cir. 2008) (internal quotation marks omitted).

First, given the recommendation that Defendants' Motion to Dismiss be granted, the request for a TRO should also be denied. *See Tsabbar v. Booth*, 293 F. Supp. 2d 328, 336 (S.D.N.Y. 2003) ("Because the complaint is being dismissed, the [c]ourt denies [p]laintiff's motion for a temporary restraining order."). Second, Lewis's request to restrain Wood, Lyon, and Merrill fails on procedural grounds. Lewis sues Defendants only in their individual capacities. (*See* Doc. 8 at 2–4.) However, "[i]njunctive relief is not available from defendants in their individual capacities." *Braswell v. Norton*, case no. 3:20cv134(AVC), 2020 WL 5820493, at *2 (D. Conn. Sept. 30, 2020); *see also Poe v. Massey*, 3 F. Supp. 2d 176, 176 (D. Conn 1998) ("Claims for prospective relief against a state officer may be asserted only against the officer in her official capacity.").

In addition, Lewis's Motion seeks to improperly restrain non-parties Monique Sullivan and Amy Jacobs regarding allegedly retaliatory disciplinary incidents that have occurred since Lewis's transfer to NSCF. (Doc. 24 at 2–3.) A court generally cannot order relief as to non-parties other than in exceptional situations where non-parties are in active concert or participation with parties. *See, e.g.*, *Mitchell v. Cuomo*, Civ. No. 9:17-CV-0892 (TJM/DJS), 2019 WL 2479611, at *10

32

(N.D.N.Y. Jan. 3, 2019) ("[C]ourts generally cannot order injunctive relief as to non-parties . . . ."). Likewise, a court generally cannot order relief as to issues that do not give rise to the complaint. *See Palmer v. Seidman*, No. 9:16-CV-0027 (GLS/TWD), 2016 WL 270864, at *2 (N.D.N.Y. Jan 22, 2016) ("[T]o prevail on a motion for preliminary injunctive relief, the moving party must establish a relationship between the injury claimed in the motion and the conduct giving rise to the complaint." (quoting *Candelaria v. Baker*, No. 00-CV-0912E(SR), 2006 WL 618576, at *3 (W.D.N.Y. Mar. 10, 2006))). Lewis admits that the incidents giving rise to the retaliation alleged in his Complaint are "not [the] cause for seeking a temporary restraining order." (Doc. 24-1 at 3.) Rather, his TRO request is based on alleged due process violations resulting from allegedly retaliatory conduct by NSCF officials (Doc. 24-2 at 4), and a Disciplinary Report issued by Correctional Officer Colin Houle at NSCF (Doc. 24-1 at 4).

In an effort to connect the allegations in the Complaint to his request for injunctive relief, Lewis asserts that the allegedly wrongful conduct is "being steered by [his] abuser's first-line supervisor, who now has been promoted to a VTDOC executive." (*Id.* at 7.) In his Affidavit attached to his Motion for a Temporary Restraining Order, Lewis states that the supervisors responsible for the alleged retaliatory conduct taking place at NSCF are Merrill and Monique Sullivan. (Doc. 24-2 at 6.) To substantiate this claim, Lewis makes the conclusory assertion that "Defendant Merrill of SSCF [is] acting in concert with Monique Sullivan." (*Id.* at 8.) This is insufficient to warrant injunctive relief.

Moreover, the alleged retaliatory conduct Lewis describes in his Complaint does not concern events that took place at NSCF. As Lewis seeks to restrain non-parties, and he has not adequately alleged a connection between the injury claimed in the Complaint and the conduct giving rise to his request for injunctive relief, I recommend that the request for a TRO be denied. *Gantt v. Lape*, No. 9:10–CV–0083 (GTS/TWD), 2012 WL 4033729, at *3 (N.D.N.Y. July 31,

2012) (denying plaintiff's motion for injunctive relief because he failed to demonstrate any relationship between his underlying retaliation claim and the ongoing acts of misconduct and retaliation by members of a different correctional facility, which formed the basis for his request for injunctive relief).

As a further ground for denial of injunctive relief, Lewis has not shown a TRO would be in the public interest or administratively feasible to enforce.  He asks the Court to restrain multiple Vermont DOC officials located in at least two facilities, as well as Merrill, who allegedly works in the executive office of the Vermont DOC.  His request would require the Court to involve itself in the administration of three separate Vermont DOC facilities—the Vermont DOC Executive Office, SSCF, and NSCF—which would improperly involve the Court in the Vermont DOC's disciplinary policies and procedures.  *See Fisher v. Goord*, 981 F. Supp. 140, 167 (W.D.N.Y. 1997) ("In the prison context, a request for injunctive relief must always be viewed with great caution so as to not immerse the federal judiciary in the management of state prisons.").

Finally, Lewis also has not demonstrated a clear or substantial likelihood of success on the merits.  *See Doninger*, 527 F. at 47.  Given the Court's recommendation that Defendants' Motion to Dismiss be granted as to his claims against all three Defendants, Lewis has not demonstrated a clear or substantial likelihood of success on the merits.

I recommend that Lewis's "Motion for Temporary Restraining Order Issued Ex Parte" be DENIED.

## VI.    Lewis's Motion to Waive Fees Associated with Records Request

Lewis requests that the Court "waive the fee[]s associated with Plaintiff's record[]s request to the [Vermont DOC], seeking email communications from employees regarding Plaintiff." (Doc. 22 at 1.)  Lewis asserts that he "has no means to pay for these records."  (*Id.*)  He contends that the records are "a matter of vital importance . . . to the need[]s of this case."  (*Id.*)

34

Lewis appears to rely on his *in forma pauperis* status under 28 U.S.C. § 1915 to request that the Court waive the fees associated with his records request to the Vermont DOC. However, 28 U.S.C. § 1915 permits district courts to waive "ordinary court fees required to file a complaint." *Gibson v. City Municipality of New York*, 692 F.3d 198, 200 (2d Cir. 2012); *see also Gonzales v. Fenner*, 128 F.R.D. 606, 607 (S.D.N.Y. 1989) (explaining that the language in 28 U.S.C. § 1915—"fees and costs"—refers to "payments which a litigant must make *to the court* in order to file and prosecute the action"). It is not a basis to waive fees for records from a state agency.

To the extent Lewis might be requesting a waiver of fees associated with discovery in this case, the IFP statute does not authorize waiver of discovery fees. *See Henderson v. Martin*, No. 3:21-cv-1308 (SRU), 2022 WL 2704100, at *7 (D. Conn. July 12, 2022) ("Although [plaintiff]'s *in forma pauperis* status under 28 U.S.C. § 1915 permits him to proceed with his case without prepaying filing fees, 'it does not authorize payment or advancement of discovery expenses by the Court.'" (quoting *El-Massri v. New Haven Corr. Ctr.*, Civil Action No. 3:18-cv-1249 (CSH), 2019 WL 3491639, at *3 (D. Conn. July 31, 2019))).

Therefore, Lewis's Motion to Waive Fees Associated with Records Request (Doc. 22) is DENIED.

## VII.    Lewis's Motion for Appointment of Counsel

Lewis also moves for the appointment of *pro bono* counsel to represent him in this action. (Doc. 23.)

"A party has no constitutionally guaranteed right to the assistance of counsel in a civil case." *Leftridge v. Conn. State Trooper Officer # 1283*, 640 F.3d 62, 68 (2d Cir. 2011); *see also United States v. Coven*, 662 F.2d 162, 176 (2d Cir. 1981). Nevertheless, a party granted *in forma pauperis* status may request that the Court appoint counsel if he is unable to afford the cost of an

35

attorney. *See* 28 U.S.C. § 1915(e)(1). The court is granted "[b]road discretion" in making this

decision. *Hodge v. Police Officers*, 802 F.2d 58, 60 (2d Cir. 1986).

In considering appointment of counsel, the court must "look first to the 'likelihood of

merit' of the underlying dispute" to determine whether the claim is likely one of substance.

*Carmona v. U.S. Bureau of Prisons*, 243 F.3d 629, 632 (2d Cir. 2001) (quoting *Hendricks v.

Coughlin*, 114 F.3d 390, 392 (2d Cir. 1997)). If the court finds that the claim is likely of

substance, it should then consider the following factors:

> [T]he indigent's ability to investigate the crucial facts, whether conflicting evidence
> implicating the need for cross-examination will be the major proof presented to the
> fact finder, the indigent's ability to present the case, the complexity of the legal
> issues[,] and any special reason in th[e] case why appointment of counsel would be
> more likely to lead to a just determination.

*Hodge*, 802 F.2d at 61–62.

Based on the facts alleged in the Complaint, it is not clear whether Lewis's claims are

likely of substance. The Court's recommendation that the Complaint be dismissed suggests that

Lewis's claims are not of substance presently. *See Harris v. Binghamton Police Dep't*, 3:22-CV-

0977 (BKS/ML), 2023 WL 417897, at *9–10 (N.D.N.Y. Jan. 26, 2023) (reasoning that plaintiff's

claims were not likely to be of substance based on the court's recommendation that the claims be

dismissed), *report and recommendation adopted*, 2023 WL 2662282 (N.D.N.Y. Mar. 28, 2023);

*Robinson v. Williams*, 6:22-CV-0982 (GTS/ML), 2023 WL 3352758, at *13 (N.D.N.Y. Jan. 12,

2023) ("In the present matter, the [c]ourt has recommended dismissal of the action. As such, the

[c]ourt cannot find that [p]laintiff's claims are likely to be of substance.").

Therefore, Lewis's Motion for Appointment of Counsel (Doc. 23) is DENIED without

prejudice.

## VIII.  Leave to Amend

District courts should not dismiss the complaint of a self-represented party without granting leave to amend at least once "when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Dolan*, 794 F.3d at 295 (internal quotation marks omitted).  A court need not grant leave to amend, however, if "amendment would be futile." *Garcia v. Super. of Great Meadow Corr. Facility*, 841 F.3d 581, 583 (2d Cir. 2016) (per curiam) (cautioning that a district court "should not dismiss a pro se complaint without granting leave to amend at least once, unless amendment would be futile" (internal quotation marks omitted)).  "Amendment is futile where the problems with the complaint's claims are substantive and not the result of inartful pleading." *Biswas v. Rouen*, 808 F. App'x 53, 55 (2d Cir. 2020) (summary order) (internal quotation marks omitted).

The Court cannot determine at this stage that amendment would be futile.  In light of Lewis's self-represented status, I recommend that he be afforded an opportunity to amend his Complaint.  The amended complaint must include all factual allegations and claims against all defendants, and it must specify the relief sought.  With respect to each claim against each defendant who committed an alleged wrongful act against him, Lewis must describe each defendant's specific involvement in the alleged constitutional deprivations.  *Bass*, 790 F.2d at 263. If filed, an amended complaint will supersede and completely replace the original Complaint.  *See Hancock v. County of Rensselaer*, 882 F.3d 58, 63 (2d Cir. 2018) (noting "[i]t is well settled that an amended pleading ordinarily supersedes the original and renders it of no legal effect") (alteration in original) (internal quotation marks omitted)).  An amended complaint must include all factual allegations in their entirety and must set forth all of Lewis's claims against all defendants and all the relief he seeks.

**<u>Conclusion</u>**

For the reasons discussed above, I recommend that Defendants' Motion to Dismiss (Doc.

19) be GRANTED.  I further recommend that, if this Report and Recommendation is adopted by

the Court, Lewis be allowed thirty days to file an amended complaint.  Failure to file an amended

complaint within that time frame should result in the dismissal of Lewis's claims with prejudice.

Finally, I recommend that Lewis's "Motion for Temporary Restraining Order Issued Ex Parte"

(Doc. 24) be DENIED.

Lewis's Motion to Waive Fees Associated with Records Request (Doc. 22) is DENIED.

Lewis's Motion for Appointment of Counsel (Doc. 23) is DENIED without prejudice.

Dated at Burlington, in the District of Vermont, this 4th day of January 2024.


*/s/ Kevin J. Doyle*
Kevin J. Doyle
United States Magistrate Judge


Any party may object to this Report and Recommendation within fourteen days after
service thereof, by filing with the Clerk of the Court and serving on the Magistrate Judge and all
parties, written objections which shall specifically identify those portions of the Report and
Recommendation to which objection is made and the basis for such objections.  *See* 28 U.S.C.
§ 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b)(2); L.R. 72(c).  Failure to timely file such objections
"operates as a waiver of any further judicial review of the magistrate's decision."  *Small v. Sec'y
of Health & Human Servs.*, 892 F.2d 15, 16 (2d Cir. 1989).